```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Criminal Case No. |
|  | ) | 5:13-cr-50-JMH |
| v. | ) | |
|  | ) | **MEMORANDUM OPINION** |
| LARRY WILSON, | ) | |
| Defendant. | ) | |

***

This matter is before the Court upon the parties' objections to the Presentence Report. [*See* Defendant's Sentencing Memorandum, DE 73, and the government's Sentencing Memorandum, DE 74]. On October 1, 2014, the Court conducted a hearing on the matter during which the government and the Defendant presented witnesses. At the conclusion of the hearing, the Court announced its ruling from the bench, that the Presentence Report calculations are supported by the evidence. This opinion supplements the Court's reasoning for that ruling.

As an initial matter, the Court notes that sentencing enhancements pursuant to the Sentencing Guidelines must be proven by a preponderance of the evidence. *United States v. Bowling,* 427 F. App'x 461, 464 (6th Cir. 2011) (citing *United States v. Mickens,* 453 F.3d 668, 673 (6th Cir. 2006)).

**I.   Amount of Unreported Income**

On June 23, 2014, Defendant pled guilty to four counts of a 12-count Superseding Indictment. Counts 5-8 charged Filing False Income Tax Returns, in violation of 26 U.S.C. § 7206(1). For sentencing, the PSR recommends that the Court find the Defendant's total amount of unreported income is $338,672.58, a number derived from an audit of the Defendant's finances by IRS Special Agent Danielle Barto. At the sentencing hearing, Agent Barto testified that her audit attempted to locate all unaccounted for cash that was directly traceable to the Defendant, including cash flowing into his accounts, used to pay expenses, and used to purchase goods and services. Agent Barto was able to trace $338,672.58 to the Defendant that was not reported as income on his tax filings.

The government alleges that Defendant's unreported income is the result of his theft from Keeneland during his employment in its ATM division. Thus, the government objects to the calculation in the PSR and argues that the amount of Defendant's unreported income should equal the total stolen from Keeneland: $726,080.

In essence, the government asks the Court to assume that the Defendant stole all of Keeneland's missing money. Notably, the Defendant has not pled guilty to theft. In addition, over half of this missing money cannot be directly traced to the Defendant, and the evidence presented at the sentencing hearing

showed that others had access to it and it was poorly supervised. Furthermore, the Background Notes to § 2T1.1 state:

> Failure to report criminally derived income is included as a factor for deterrence purposes. Criminally derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of 28 U.S.C. § 994(i)(2).

*Background Note*, U.S.S.G. § 2T1.1. Here, the PSR includes an enhancement for income derived from criminal activity. That enhancement seems to be the redress the guidelines anticipated for Defendant's alleged theft, rather than computing the unreported income using untraceable amounts that are initially based on an assumption. Therefore, the Court declines to adjust the PSR's recommendation, and finds that $338,672.58 is the Defendant's total amount of unreported income. This results in a tax loss greater than $80,000 and less than $200,000 and, thus, a base offense level of 16. *See* U.S.S.G. § 2T4.1(G).

**II. Obstruction of Justice**

The government objects to the PSR's failure to include an enhancement for obstruction of justice and asks for a two-level increase pursuant to U.S.S.G. § 3C1.1. The government contends that on several occasions Defendant liquidated assets and attempted to hide money from officials. The probation office responds that Defendant's actions do not rise to the level of

3

obstruction because the money was easily traceable and the attempt to move it did not materially impede the investigation.

U.S.S.G. § 3C1.1 describes an enhancement for "attempted" obstruction of justice, so the fact that officers were able to learn of the money transfers later does not mean that this enhancement is inapplicable to Defendant's case. *See United States v. Shetty*, 130 F.3d 1324, 1334 (9th Cir. 1997) ("The fact that the Government eventually learned of the $280,000 does not change the fact that [the defendant's] transfer of the funds to a Swiss bank was a classic attempt to conceal evidence ...").

However, the Application Notes to this guideline explain that the enhancement applies to actions concealing evidence that is *material* to the investigation, defined as evidence that "would tend to influence or affect the issue under determination." *See Application Notes* 4(D) and 6, U.S.S.G. § 3C1.1. Here, it does not appear that Defendant's moving of money or sale of his car affected the issue under determination, that is, his filing of false tax returns. Accordingly, the Court declines to include an enhancement for obstruction of justice.

## III. Abuse of Trust

The government objects to the PSR's failure to include an enhancement for abuse of trust pursuant to U.S.S.G. § 3B1.3. The application of this enhancement turns on whether Defendant was in a position of trust during his employment at Keeneland.

The government argues Defendant was given complete and exclusive control over the money used to fill the ATMs, was the only Keeneland employee storing cash in a safe in his office and allowed to transport money unescorted by a security officer (the Defendant was allowed to carry a firearm). The probation office responds that Defendant's duties were simple and structured and although the administrative controls over the money he handled were lax, Defendant was akin to an armored car guard. *See U.S. v. Ward*, 222 F.3d 909, 912 (11th Cir. 2000) (finding armored car guard was not in a position of trust). The Defendant added at the sentencing hearing that his job performance reports from Keeneland indicated that he was typically asked to do various tasks and exercised little discretion.

"The question is not the amount of supervision [the defendant] received; rather, the critical question is whether [the defendant] was given substantial professional or managerial discretion in his position." *United States v. Sweet*, 630 F.3d 477, 482 (6th Cir. 2011) (where defendant was not in a position of trust as someone "slightly above a bank teller"); *see also United States v. Brogan*, 238 F.3d 780, 781-86 (6th Cir. 2001) ("Just because we trust a person to handle another's property in the course of their job does not mean they occupy a "position of trust."..."This sentence enhancement is meant to discourage

violations of the kind of trust we show to our fiduciaries and public officials...").

Defendant lacked supervision at Keeneland, but this seems due to Keeneland's poor oversight of the ATM division rather than Defendant's job title or the level of discretion he was granted. His job was more like those that have not been found to be positions of trust, like a bank teller or armored car guard, than those that have. *See United States v. Young*, 266 F.3d 468, 471 (6th Cir. 2001) (finding that the city manager was in a position of trust); *United States v. Pavcovich*, 92 F. App'x 259, 260 (6th Cir. 2004) (holding that a bank's assistant vice president was in a position of trust). As a result, the Court declines to include an enhancement for abuse of trust.

**IV. Income From Criminal Activity**

Defendant objects to the two-level enhancement included in the PSR for failing to report income in excess of $10,000 that was from criminal activity, maintaining that the income was from legitimate sources including sales of firearms, vehicles and their parts, and gambling. The probation office responds that there is no evidence of legitimate sources of income and concludes that it is likely that the money was stolen from Keeneland.

Defendant was employed by Keeneland between 2006 and 2009, and his job was to service and restock the ATMs. The government has

6

shown that Defendant had access to approximately $20 million during that time and that over $700,000 of that is missing. In addition, there is ample evidence that the Defendant was living well beyond his means. Defendant's Chapter 7 bankruptcy was discharged in 1997. The combined total of Defendant's and his wife's income never exceeded $81,000 between 2006 and 2009. Yet, a consent search of Defendant's home revealed marble flooring, granite countertops, new stainless steel appliances, a vault room containing approximately 30 firearms, a personal golf cart, a 2008 Shelby GT in the garage (Defendant had made a $40,000 down payment in cash for the car), and $2,500 in twenty dollar bills that were banded with bands that appeared similar to those used by Keeneland. Moreover, there was no testimony that Defendant was such a successful gambler as to accumulate winnings in that amount or to otherwise substantiate Defendant's claims of other sources of income.

There is overwhelming evidence to suggest that Defendant's excess cash was money he had stolen from the Keeneland ATM division. In addition, the Background Notes to § 2T1.1 indicate that this enhancement is meant for just this type of situation, in which the facts indicate that excess income came from illicit activities, although the tax loss is low because the amount of funds illegally obtained are difficult to establish. *See supra* p. 2, quoting Background Note to § 2T1.1. Therefore, the Court

7

accepts the PSR recommendation of a two-level enhancement for income derived from criminal activity in excess of $10,000. U.S.S.G. § 2T1.1(b)(1).

**V.  Conclusion**

For the foregoing reasons, the Court finds that the offense level as stated in the Presentence Report are properly calculated.

This the 2nd day of October, 2014.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge